**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| KRISTINA  PILKINGTON and | ) | |
| JANET  SCHOO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-00255-TWP-MJD |
| | ) | |
| BROWN & BROWN, INC., and | ) | |
| JOHN  ELMER, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant John Elmer's ("Mr. Elmer") Motion for Summary Judgment (Dkt. 45), and Defendant Brown & Brown, Inc.'s ("Brown & Brown") Motion for Summary Judgment (Dkt. 48).  Plaintiffs, Kristina Pilkington ("Ms. Pilkington") and Janet Schoo ("Ms. Schoo") filed this cause of action against Brown & Brown pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging hostile work environment, sexual harassment, and retaliation in employment,[1] as well as claims for negligent retention under Indiana common law.  Ms. Pilkington has also asserted claims against Mr. Elmer in his individual capacity for battery and intentional infliction of emotional distress.  For the reasons set forth below, Mr. Elmer's motion is **DENIED**, and Brown & Brown's motion is **GRANTED in part** and **DENIED in part**.

## I.  BACKGROUND

The following material facts are not in dispute and are viewed in light most favorable to Ms. Pilkington and Ms. Schoo as the non-moving parties.  Ms. Pilkington and Ms. Schoo were

---

[1] Only Ms. Pilkington brought a claim for retaliation against Brown & Brown; however, she waived this claim in her response to Brown & Brown's motion.  Dkt. 56 at 1 n.1.  Therefore, the Court **GRANTS** Brown & Brown's motion on Ms. Pilkington's retaliation claim.

employees of a small, independent insurance agency, One Source Insurance, Inc. ("One Source"). Ms. Schoo had worked for One Source and its predecessor business since January 2001, and Ms. Pilkington started at One Source in September 2008. One Source was owned by Mr. Elmer. Mr. Elmer sold the business to Brown & Brown on March 1, 2009, at which time all of the One Source employees became Brown & Brown employees. As of March 1, 2009, One Source had four employees that worked out of a location in Noblesville, Indiana (the "Noblesville office"). The four employees continued to work out of the Noblesville office until February 4, 2011, when they moved to Brown & Brown's office in Carmel, Indiana ("the Carmel office"). Following the merger, the three female Noblesville office employees reported to Mr. Elmer, and Mr. Elmer reported to Scott Penny, Brown & Brown's Regional President and Chief Acquisition Officer ("Mr. Penny").

The environment in the Noblesville office was very casual, and "sexual banter" was part of the office culture. However, Plaintiffs assert that 90% of the sexual banter in the office was initiated by Mr. Elmer. Such banter included email exchanges containing innuendo and inappropriate photographs. Mr. Elmer also told multiple sexually-oriented jokes, made sexual comments about other women, asked employees about sexual relationships with their significant others and implied that Ms. Schoo had an incestuous relationship with an uncle, and made sexual comments about employees' appearances. Mr. Elmer would also send sexually suggestive texts to Ms. Pilkington and expressed feelings toward her. On multiple occasions, Mr. Elmer made inappropriate physical contact with Ms. Pilkington and Ms. Schoo, including skimming his hand over their breasts with an open palm while they were riding as passengers in his car, and grabbing Ms. Pilkington's buttocks while squeezing closely behind her going through a turnstile. He also smacked Ms. Schoo on the buttocks on at least two occasions, and grabbed Ms.

Pilkington's buttocks while hugging her.  This conduct often occurred in the presence of clients, not just among employees.  The incidents mentioned above are just a sample of the conduct forming the basis of Ms. Pilkington's and Ms. Schoo's claims, and are undisputed by Brown & Brown and Mr. Elmer.  Mr. Elmer's conduct is recounted in greater detail over several pages of Brown & Brown's brief in support of summary judgment.  *See* Dkt. 49 at 3-12.

Sometime shortly after Brown & Brown acquired One Source, Ms. Pilkington and another Noblesville office employee, Lisa Anderson, talked with two unknown female members of a Brown & Brown financial audit team about Mr. Elmer's conduct.  The auditor had overheard Mr. Elmer make an inappropriate comment and asked Ms. Pilkington if he always engaged in such behavior.  Ms. Pilkington responded affirmatively and stated that it made her uncomfortable, but she was afraid she would lose her job if she complained.  The auditor suggested Ms. Pilkington make an anonymous complaint through Brown & Brown's corporate compliance line, but Ms. Pilkington believed she would be identified if she made a complaint because she worked in such a small office.

On November 5, 2010, Mr. Elmer learned through a friend that Ms. Pilkington was "trying to build a case against [him] to file a sexual harassment claim."  Mr. Elmer called his boss, Mr. Penny, who instructed Mr. Elmer not to ask Ms. Pilkington if this information was true and to not make any additional sexually related comments to any of his employees.  However, Mr. Elmer did contact Ms. Schoo and asked if she knew whether Ms. Pilkington planned to file a complaint.  Ms. Schoo advised that she did not know and Mr. Elmer asked her if she would be willing to find out Ms. Pilkington's intentions.  On November 8, 2010, Mr. Elmer sent Ms. Pilkington an email offering to apologize in the event his conduct made her feel uncomfortable or embarrassed, but Ms. Pilkington did not respond.  Between November 8, 2010 and the time

the Noblesville office employees moved into the Carmel office on February 4, 2011, Plaintiffs did not experience or witness any sexually-oriented behavior from Mr. Elmer.  However, the office environment became tense and uncomfortable.

Ms. Pilkington filed her first Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 22, 2010.  Mr. Elmer learned about the charge from Mr. Penny on December 10, 2010, and he was instructed to limit discussions with Ms. Pilkington to one hundred percent business.  Brown & Brown's Corporate Claims Administrator conducted an investigation by collecting and reviewing documents and interviewing Mr. Elmer.  Because Ms. Pilkington had retained counsel, Brown & Brown did not interview her.  Mr. Elmer freely admitted that he had engaged in "flirtatious" behavior with Ms. Pilkington and provided samples of email exchanges.  Following a lunch meeting between Mr. Penny and Mr. Elmer, Mr. Penny decided to accelerate the plans to move the Noblesville office staff to the Carmel office.

Shortly prior to the move, on January 28, 2011, Fred McClaine, Executive Vice President of Brown & Brown of Indiana, Inc. ("Mr. McClaine"), had a lunch meeting with the three women that worked in the Noblesville office to get acquainted with them prior to the move.  At the lunch, Ms. Anderson described some of Mr. Elmer's inappropriate, sexually-oriented behavior, and advised Mr. McClaine that the office had become very tense since Ms. Pilkington filed her charge.  Mr. McClaine reported the information to Brown & Brown's human resources department, and Melonie DeJulio, a human resources representative, scheduled a trip from Brown & Brown's headquarters in Florida.  Ms. DeJulio was to visit the Carmel office on February 10, 2011, five business days after the Noblesville office employees were scheduled to move into the Carmel office.

4

The Noblesville employees moved into the Carmel office on February 4, 2011, and the three women started reporting to Angela Walton, a Senior Vice President.  At the end of the day on February 4, 2011, Mr. Elmer made a comment to Ms. Schoo about groping the Carmel office receptionist, to which Ms. Schoo did not respond.  On February 7, 2011, Mr. Elmer apologized to Ms. Schoo for making the comment, but later that afternoon Ms. Schoo made a formal complaint of sexual harassment to Mr. McClaine.  Mr. McClaine offered to move Ms. Schoo's cubicle away from Mr. Elmer's, and also notified Ms. DeJulio of her complaint.  Mr. McClaine also spoke with Mr. Elmer, who admitted to making the inappropriate comment to Ms. Schoo. Mr. McClaine informed Mr. Elmer that he could no longer trust him, and that this was probably the end of Mr. Elmer's relationship with Brown & Brown.  Mr. McClaine also instructed Mr. Elmer not to speak with Ms. Schoo or Ms. Pilkington without first speaking to Ms. Walton, to come in the evenings when no one else was there, and move his things back to the Noblesville office and only work out of that location.

Ms. DeJulio came to the Carmel office for her scheduled interview with the female employees from the Noblesville office, but did not interview Ms. Pilkington because she was represented by counsel.  Following completion of Brown & Brown's investigation, Mr. Penny and Mr. McClaine met with Mr. Elmer in mid-February and presented him with a severance agreement.  Mr. Elmer's employment with Brown & Brown ended on March 1, 2011.

Ms. Schoo filed her charge of discrimination with the EEOC on March 9, 2011, and resigned from Brown & Brown effective on April 1, 2011.  Ms. Pilkington resigned effective September 1, 2011, following Brown & Brown's failure to reassign her to client groups and duties of another employee who had planned to retire, but later decided to stay on part-time. Additional facts will be addressed below as necessary.

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).   In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).   However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).   "In much the same way that a court is not required to scour the record in search of evidence to defeat the motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted).   "[N]either the mere existence of some alleged factual dispute between the parties . . . nor the existence of some metaphysical doubt as to the material facts . . . is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III.   <u>DISCUSSION</u>

### A.     **Claims against Brown & Brown**

Both Ms. Pilkington and Ms. Schoo have asserted claims against Brown & Brown for hostile environment, sexual harassment under Title VII, and negligent retention under Indiana common law.  Each claim will be addressed in turn.

### 1.       Hostile Work Environment Sexual Harassment

Sexual harassment is an actionable form of discrimination based upon sex under Title VII. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).  To establish a claim, each plaintiff must establish that "(1) she was subjected to unwelcome sexual conduct, advances, or requests; (2) because of her sex; (3) the acts were severe or pervasive enough to create a hostile work environment; and (4) there is a basis for employer liability." *Hine v. Extremity Imaging Partners, Inc.*, 773 F. Supp. 2d 788, 795 (S.D. Ind. 2011) (citing *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 684 (7th Cir. 2010)).   Brown & Brown disputes that the conduct was unwelcome, was severe and pervasive, and their basis for liability.

### 2. Severe and Pervasive Conduct

For sexual harassment to be actionable, a plaintiff must prove conduct that is so severe or pervasive as "'to alter the conditions of [her] employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB*, 477 U.S. at 67 (quoting *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)).  In determining whether the harassment rises to this level, courts consider the totality of the circumstances, including the "'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Gentry v. Export Packaging Co.*, 238 F.3d 842, 850 (7th Cir. 2001) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  In evaluating the severity of the harassment, courts have stated:

> On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures.  On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

*E.E.O.C. v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422, 432 (7th Cir. 2012) (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995) (additional citations omitted)).

The Court finds that a reasonable jury could conclude that Mr. Elmer's conduct directed toward Ms. Pilkington and Ms. Schoo constituted "severe and pervasive conduct" actionable under Title VII. The undisputed facts show that Mr. Elmer's conduct spanned the entire range of the types of behaviors set forth by the Seventh Circuit in *Baskerville*, including physical contact without consent, sexual solicitations, obscene language and gestures, and pornographic pictures, not just merely vulgar banter and innuendo. *See* Dkt. 49 at 3-12; Dkt. 54 at 1-4. Mr. Elmer subjected the Plaintiffs not only to inappropriate comments and images, but also made offensive physical contact with them. The Seventh Circuit has stated that "instances of uninvited physical contact with intimate parts of the body are among the most severe types of sexual harassment." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 692 (7th Cir. 2010) (citations omitted). It is for the jury to weigh the Plaintiffs' responses to Mr. Elmer's conduct and determine whether their work environment was subjectively abusive in addition to being objectively abusive.

### 3.     Unwelcome Conduct

The Court is not persuaded by Brown & Brown's argument that Ms. Schoo willingly engaged in sexual banter with Mr. Elmer, and therefore his conduct was not unwelcome.[2] There is evidence that failure to engage Mr. Elmer in such inappropriate exchanges resulted in a tense, difficult work environment, and Mr. Elmer would ask Ms. Schoo if she was "going to church" when she did not engage in the sexual banter. "[T]he fact that sex-related conduct was 'voluntary,' in the sense that the complainant was not forced to participate against her will, is not a defense to a sexual harassment suit brought under Title VII." *Meritor Sav. Bank, FSB*, 477

---

[2] Brown & Brown does not even argue that the conduct directed toward Ms. Pilkington was not unwelcome.

U.S. at 68; *see also Van Jelgerhuis v. Mercury Fin. Co.*, 940 F. Supp. 1344, 1361 (S.D. Ind. 1996) ("[A] woman does not forfeit her right to be free from sexual harassment by virtue of her participation in sexual banter."). Ms. Schoo has presented sufficient facts for a reasonable jury to conclude that Mr. Elmer's conduct toward her was unwelcome.

### ok.    Basis for Liability

An employer may be held vicariously liable for a supervisor's sexual harassment of a subordinate, and there is no need to show that the victim suffered a tangible employment action. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). Because Mr. Elmer was the Plaintiffs' supervisor, Brown & Brown can only avoid liability if it can prove the two elements of the *Faragher/Ellerth* affirmative defense: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

Brown & Brown argues that there is no basis upon which to hold them liable for Mr. Elmer's conduct because they exercised reasonable care in correcting sexually harassing behavior, and the Plaintiffs unreasonably failed to take advantage of corrective opportunities to avoid harm. Brown & Brown asserts that they created and distributed an effective sexual harassment policy which provided a meaningful process whereby employees could express concerns regarding possible harassment. However, while such policy is evidence of preventative measures, "'the mere creation of a sexual harassment policy will not shield a company from its responsibility to actively prevent sexual harassment in the workplace.'" *Mgmt. Hospitality of Racine, Inc.*, 666 F.3d at 435 (quoting *Gentry*, 238 F.3d at 847).

9

While Brown & Brown did have a sexual harassment policy in place and eventually terminated Mr. Elmer for his conduct, there is also sufficient evidence for a jury to find that Brown & Brown did not exercise reasonable care in their actions and procedures.  Brown & Brown had a means by which employees could anonymously report sexual harassment; however, a jury could find that it was not reasonably effective in practice because it was easy to identify who made the complaint based upon the size of the office.  *See id.* ("[T]the policy must not only be reasonably effective on paper, but also reasonably effective in practice.").  Also, there is evidence that Mr. Elmer's supervisor knew about the alleged harassment as early as November 5, 2010, but failed to take any action until February 2011.  A jury must determine whether the Plaintiffs' failure to report Mr. Elmer's conduct to Brown & Brown sooner was unreasonable, and also whether Brown & Brown's means of preventing and addressing the harassment was reasonable.  Therefore, the Court finds that there are questions of fact with regard to the Plaintiffs' hostile work environment claims, and Brown & Brown's motion for summary judgment on the Plaintiffs' Title VII claims is **DENIED**.

### 5.    Negligent Retention

Ms. Pilkington and Ms. Schoo have also asserted Indiana common law claims for negligent retention based upon Brown & Brown's failure to terminate Mr. Elmer prior to March 1, 2011.  Indiana recognizes a cause of action against an employer for negligent hiring, supervision, or retention of an employee, and has adopted the Restatement (Second) of Torts § 317 as the standard with regard to this tort.  *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 609 (7th Cir. 2008).   In order to be held liable, the employer must have known or had reason to know of the employee's misconduct and failed to take appropriate action.  *Id.* Liability for negligent retention only arises where the employee's conduct creates an

unreasonable risk of bodily harm or is in a manner dangerous to others. *Briggs v. Finley*, 631 N.E.2d 959, 966 (Ind. Ct. App. 1994); Rest. 2d of Torts § 317 cmt. c. Sex-related remarks do not create a reasonable risk of bodily harm for purposes of this cause of action, nor is it "dangerous" within the meaning of § 317. *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 710 F. Supp. 2d 777, 805 (N.D. Ind. 2010). Likewise, inappropriate touching is also not the type of bodily harm contemplated by § 317. Plaintiffs have not shown that Mr. Elmer's conduct, although grossly inappropriate, caused or posed an unreasonable risk of bodily harm to others in the workplace. Therefore, Brown & Brown's motion on Plaintiffs' negligent retention claim is **GRANTED**.

**B.     Claims Against Mr. Elmer**

Ms. Pilkington has asserted individual claims against Mr. Elmer for the Indiana common law torts of battery and intentional infliction of emotional distress ("IIED"). Mr. Elmer argues that many of Ms. Pilkington's claims are barred by the two year statute of limitations contained in Ind. Code § 34-11-2-4, and that she cannot prove the elements of battery and IIED as a matter of law.

**1.     Battery**

Ms. Pilkington has asserted a claim of battery against Mr. Elmer based upon three incidents: 1) grabbing of her buttocks in a turnstile in the fall of 2010; 2) grazing of her breasts in fall of 2009; and 3) touching of her buttocks while hugging sometime in 2010. Under Indiana law, "'[a]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.'" *Mullins v. Parkview Hosp., Inc*., 865 N.E.2d 608, 610 (Ind. 2007) (citing Restatement (Second) of Torts § 13 (1965)). A defendant is liable for a simple battery if he

11

"'intentionally causes bodily contact to the plaintiff in a way not justified by the plaintiff's apparent wishes or by a privilege, and the contact is in fact harmful or against the plaintiff's will.'"  *Pinkney v. Thomas*, 583 F. Supp. 2d 970, 976 (N.D. Ind. 2008) (quoting 1 D.B. Dobbs, *The Law of Torts* § 28, at 52-53 (2001)).  A plaintiff need not show that she suffered physical or emotional injury, and "[a] touching, however slight, may constitute an assault and battery" which may entitle the plaintiff to other damages besides compensatory.  *Singh v. Lyday*, 889 N.E.2d 342, 360-61 (Ind. Ct. App. 2008).

The Court finds that a reasonable jury could conclude that Mr. Elmer's conduct that occurred after February 24, 2010 constitutes actionable battery.  Mr. Elmer asserts that he is not arguing that Ms. Pilkington "asked for it" based upon her prior interactions with him; he argues that their prior interactions merely provide "context" to the relationship between them to show that the contact was not rude or insolent.  However, the Court does not see any other way that his argument could be characterized.  Prior sexual banter and joking does not justify inappropriate touching of a person's intimate areas as a matter of law, and Ms. Pilkington herself expressed her objection to the conduct after it occurred.  Contrary to Mr. Elmer's argument, she was not required to "cry . . . slap . . . tell her boyfriend . . . [or] report it to the police" (Dkt. 57 at 3) in order to justify a finding that the contact was unwelcome and offensive, and her failure to react in this manner does not support dismissal of her claim.  Therefore, the Court **DENIES** Mr. Elmer's motion on Ms. Pilkington's battery claim to the extent it is based upon conduct that occurred within the statute of limitations.

### 2.      Intentional Infliction of Emotional Distress

Finally, Ms. Pilkington also asserts a claim against Mr. Elmer for intentional infliction of emotional distress.  Under Indiana law, the tort of IIED is defined as: "One who by extreme and

outrageous conduct intentionally or recklessly causes severe emotional distress to another. . . ." *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1264 (Ind. Ct. App. 2002) (quoting *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991) (quoting Restatement (Second) of Torts § 46 (1965))). The conduct must be intentional *or* reckless, and it is considered extreme and outrageous where it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Conwell v. Beatty*, 667 N.E.2d 768, 777 (Ind. Ct. App. 1996)).

Mr. Elmer argues that summary judgment should be granted in his favor because Ms. Pilkington cannot prove that the conduct was extreme or outrageous, that he intended to harm her, or that emotional distress resulted from his conduct.   With regard to whether the conduct was extreme and outrageous, the Indiana Court of Appeals has held "[w]hat constitutes 'extreme and outrageous' conduct depends, in part, upon prevailing cultural norms and values" and only in appropriate cases can this determination be made as a matter of law.  *Bradley v. Hall*, 720 N.E.2d 747, 753 (Ind. Ct. App. 1999).  Ms. Pilkington has presented sufficient factual questions upon which a jury should be permitted to determine whether Mr. Elmer's conduct was extreme and outrageous.

Ms. Pilkington has also presented sufficient factual questions with regard to Mr. Elmer's intent.  "[W]here intentional torts are concerned, recovery for emotional distress is now permitted . . . if the tort is one which would *foreseeably* provoke an emotional disturbance of the kind normally to be aroused in the mind of a reasonable person." *Van Jelgerhuis*, 940 F. Supp. at 1369 (quoting *Shuamber v. Henderson*, 579 N.E.2d 452, 455 (Ind. 1991)) (emphasis in original).  The question of whether Mr. Elmer's numerous instances of inappropriate conduct would foreseeably provoke an emotional disturbance in the mind of a reasonable person is one to

be answered by a jury, not this Court. Likewise, it is for the fact finder to determine whether the emotional distress experienced by Ms. Pilkington in reaction to the barrage of sexually inappropriate conduct was sufficiently severe such that Mr. Elmer should be held liable for IIED. Therefore, Mr. Elmer's motion for summary judgment on Ms. Pilkington's IIED claim is **DENIED**.

## IV.   CONCLUSION

For the reasons set forth above, the Court **DENIES** Mr. Elmer's motion for summary judgment on Ms. Pilkington's claims for battery and intentional infliction of emotional distress (Dkt. 45). The Court **GRANTS in part** and **DENIES in part** Brown & Brown's motion for summary judgment (Dkt. 48). Summary judgment is **GRANTED** with respect to the Plaintiffs' negligent retention claim[3] and Ms. Pilkington's retaliation claim. Summary judgment is **DENIED** with respect to the Plaintiffs' hostile work environment claim.


    **SO ORDERED.**

Date: ___08/20/2013___                          _____
                                                Hon. Tanya Walton Pratt, Judge
                                                United States District Court
                                                Southern District of Indiana

DISTRIBUTION:

Daniel LaPointe Kent
LAPOINTE LAW FIRM P.C.
dkent@lapointelawfirm.com

Mary Jane Lapointe
LAPOINTE LAW FIRM PC
maryj@lapointelawfirm.com

Jane Ann Himsel
LITTLER MENDELSON
jhimsel@littler.com

---

[3] As stated earlier, this claim was waived by Ms. Pilkington in her response to Brown & Brown's motion.

Brian Lee Mosby
LITTLER MENDELSON, P.C.
bmosby@littler.com

Joel Samuel Paul
RAMEY & HAILEY
joel@rameyandhaileylaw.com

Mary Beth Ramey
RAMEY & HAILEY
marybeth@rameyandhaileylaw.com

Richard D. Hailey
RAMEY & HAILEY
rich@rameyandhaileylaw.com